IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DAVID FILER, | : | CONSOLIDATED UNDER |
| | : | MDL 875 |
| Plaintiff, | : | |
| | : | |
| | : | Transferred from the |
| v. | : | Northern District of |
| | : | California |
| | : | (Case No. 12-00514) |
| FOSTER WHEELER LLC, | : | |
| ET AL., | : | |
| | : | E.D. PA CIVIL ACTION NO. |
| Defendants. | : | 2:12-60034-ER[1] |

M E M O R A N D U M

EDUARDO C. ROBRENO, J.                          January 28, 2014

TABLE OF CONTENTS

I.    BACKGROUND............................................... 4
II.   LEGAL STANDARD........................................... 5
      A.    Summary Judgment Standard.......................... 5
      B.    The Applicable Law (Maritime Law).................. 7
      C.    Negligence Liability Under Maritime Law............10
III.  DISCUSSION............................................... 12
      A.    A Navy Ship Is Not Itself a "Product" Under
            Maritime Strict Product Liability Law ............. 12
      B.    Rejection of Defendants' Arguments................. 16
      C.    Scope of Duty and Application of Negligence Law.... 30
IV.   CONCLUSION............................................... 35

---

[1]    This memorandum applies to the eleven motions by Navy shipbuilder defendants pending in the follow cases: (1) Founds v. General Electric Co., No. 10-69380 (ECF No. 19), (2) Hilt v. Foster Wheeler, LLC, No. 11-66273 (ECF No. 45), (3) Kelly v. CBS Corp., No. 11-67269 (ECF No. 208), (4) Quiroz-Greene v. Thomas Dee Engineering Co., No. 11-67756 (ECF No. 45), (5) Filer v. Foster Wheeler, LLC, No. 12-60034 (ECF Nos. 34 and 35), (6) Duenas v. General Electric Co., No. 12-60040 (ECF Nos. 42 and 43), (7) Salisbury v. Asbestos Corp., Ltd., No. 12-60168 (ECF No. 43), and (8) Leonard v. CBS Corp., No. 12-60177 (ECF Nos. 31 and 32). Separate orders as to each motion will be entered herewith.

Before the Court is the issue whether, under maritime law, a builder of Navy ships is liable under a negligence theory for asbestos-related injuries arising from products it installed aboard a ship. The Court has previously broached this issue under certain limited factual scenarios. See, e.g., Robertson v. Carrier Corp., No. 09-64068, 2012 WL 7760441, at *1 (E.D. Pa. Nov. 8, 2012)(Robreno, J.)(denying summary judgment on negligence claims where plaintiff presented evidence of negligent conduct by Defendant Todd Shipyards' employees in performing maintenance and repair work aboard a ship many years after the ship was provided to the Navy); Weaver v. Todd Pacific Shipyard Corp., No. 09-92273, 2012 WL 7760436, at *1 (E.D. Pa. Dec. 11, 2012)(Robreno, J.) (same); Lewis v. Todd Shipyard Corp., No. 11-67658, 2013 WL 1880792, at *1 (E.D. Pa. April 4, 2013)(Robreno, J.) (same); Young v. Georgia Pacific Corp., No. 11-67757 (ECF No. 114 at 11, later amended on other grounds by ECF No. 122) (E.D. Pa. Nov. 30, 2012) (granting summary judgment on negligence claim where Plaintiff failed to provide evidence that Defendant Huntington Ingalls knew or had reason to know that the product at issue was hazardous to plaintiff, as required for a negligence claim, and as set forth in Section 388(a) of the Restatement (Second) of Torts).

2

In these cases, the Court cited to Supreme Court
precedent regarding negligence under maritime law, stating that,
"[a]s a matter of law, [the shipbuilder] Defendant owed Plaintiff
a duty of reasonable care under the circumstances." Id. (citing
Norfolk Shipbuilding & Drydock Corp. v. Garris, 532 U.S. 811,
813-15, 121 S. Ct. 1927, 1929-31 (2001); East River S.S. Corp. v.
Transamerica Delaval, Inc., 476 U.S. 858, 866, 106 S. Ct. 2295,
2299 (1986) (citing Kermarec v. Compagnie Generale
Transatlantique, 358 U.S. 625, 632, 79 S. Ct. 406, 410 (1959));
Hess v. U.S., 361 U.S. 314, 323, 80 S. Ct. 341, 348 (1960)
(citing Kermarec)).

Now, some shipbuilder defendants in the MDL seek
reconsideration or clarification of the Court's prior rulings on
this issue. The facts of the instant cases present the Court with
an opportunity to address more comprehensively under maritime law
a Navy shipbuilder's liability on a negligence theory.

For the reasons that follow, the Court holds that, under
maritime law, a builder of a Navy ship (like any other entity or
individual) is liable in negligence if it failed to exercise
reasonable care under the circumstances. In light of this long-
standing and well-established rule of law, Defendants' motions for
summary judgment on Plaintiffs' negligence claims on grounds that
there was no duty to warn Plaintiffs about the hazards of the

products installed aboard Navy ships is denied. On the other hand,
Defendants' motions for summary judgment on Plaintiffs' strict
liability claims are granted because, as set forth in Mack v.
General Electric Co., 896 F. Supp. 2d 333 (E.D. Pa. 2012)(Robreno,
J.), a Navy ship is not a product within the meaning of strict
product liability law.

## I.    BACKGROUND

The cases before the Court were transferred from the
United States District Court for the Northern District of
California to the United States District Court for the Eastern
District of Pennsylvania as part of MDL-875. Plaintiffs, who
worked aboard Navy ships (or are the heirs and/or successors-in-
interest to those who worked aboard Navy ships),[2] allege that
they were exposed to asbestos from insulation installed by
Defendants aboard Navy ships at various times, while employed at
different locations, which were usually shipyards. Plaintiffs
have brought both negligence and strict product liability claims
against a number of defendants, alleging, inter alia, that
Defendants are liable for failing to warn them of the hazards of
asbestos associated with asbestos-containing products (here,
insulation) manufactured by others but installed by Defendants.

---

[2]    Some of the Plaintiffs (or their decedents) were serving in
the Navy during their work aboard Navy ships, while others were
working as employees of private employers (such as shipyards or
private contractors).

Defendants are builders of Navy ships: Puget Sound
Commerce Center, Inc. (formerly known as Todd Shipyards
Corporation) ("Todd Shipyards"), Huntington Ingalls Incorporated
(formerly known as Northrop Grumman Shipbuilding and Newport News
Shipbuilding and Dry Dock Company and successor to Avondale
Shipyard and Ingalls Shipbuilding) ("Huntington Ingalls"), and
General Dynamics Corporation ("General Dynamics") (collectively,
"Defendants"). Each Defendant has moved for summary judgment,
contending, inter alia, that it is free from liability in this
case because it had no duty to warn regarding the various
asbestos-containing products it installed aboard ships it built
for the Navy. Defendants have further asserted that they are not
liable on a negligence claim because this Court previously ruled
that they are not liable on a strict product liability theory
(due to the Court's determination that a Navy ship is not a
"product" to which strict product liability theory applies). See
Mack, 896 F. Supp. 2d at 346. Defendants contend that any
liability sounding in negligence would be inconsistent with this
Court's holding in Mack.

## II.  LEGAL STANDARD

### A.   Summary Judgment Standard

Summary judgment is appropriate if there is no genuine
dispute as to any material fact and the moving party is entitled

to judgment as a matter of law. Fed. R. Civ. P. 56(a). "A motion for summary judgment will not be defeated by 'the mere existence' of some disputed facts, but will be denied when there is a genuine issue of material fact." Am. Eagle Outfitters v. Lyle & Scott Ltd., 584 F.3d 575, 581 (3d Cir. 2009) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-248 (1986)). A fact is "material" if proof of its existence or non-existence might affect the outcome of the litigation, and a dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248.

In undertaking this analysis, the court views the facts in the light most favorable to the non-moving party. "After making all reasonable inferences in the nonmoving party's favor, there is a genuine issue of material fact if a reasonable jury could find for the nonmoving party." Pignataro v. Port Auth. of N.Y. & N.J., 593 F.3d 265, 268 (3d Cir. 2010) (citing Reliance Ins. Co. v. Moessner, 121 F.3d 895, 900 (3d Cir. 1997)). While the moving party bears the initial burden of showing the absence of a genuine issue of material fact, meeting this obligation shifts the burden to the non-moving party who must "set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 250.

B.    The Applicable Law (Maritime Law)

The parties assert that either maritime law or California law applies to these cases. In this Circuit, where a case sounds in admiralty, application of a state's law is inappropriate. Gibbs ex rel. Gibbs v. Carnival Cruise Lines, 314 F.3d 125, 131-32 (3d Cir. 2002). Therefore, if the Court determines that maritime law applies, the analysis ends there and the Court applies maritime law. See id.

Whether maritime law is applicable is a threshold dispute that is a question of federal law, see U.S. Const. Art. III, § 2; 28 U.S.C. § 1333(1), and is therefore governed by the law of the circuit in which the MDL court sits. See Various Plaintiffs v. Various Defendants ("Oil Field Cases"), 673 F. Supp. 2d 358, 362 (E.D. Pa. 2009)(Robreno, J.). This Court has previously set forth guidance on this issue. See Conner v. Alfa Laval, Inc., 799 F. Supp. 2d 455 (E.D. Pa. 2011)(Robreno, J.).

In order for maritime law to apply, a plaintiff's exposure underlying a product liability claim must meet both a locality test and a connection test. Id. at 463-66 (discussing Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co., 513 U.S. 527, 534 (1995)). The locality test requires that the tort occur on navigable waters or, for injuries suffered on land, that the injury be caused by a vessel on navigable waters. Id.

7

In assessing whether work was on "navigable waters" (i.e., was sea-based) it is important to note that work performed aboard a ship that is docked at the shipyard is sea-based work, performed on navigable waters. See Sisson v. Ruby, 497 U.S. 358 (1990). This Court has previously clarified that this includes work aboard a ship that is in "dry dock." See Deuber v. Asbestos Corp., No. 10-78931, 2011 WL 6415339, at *1 n.1 (E.D. Pa. Dec. 2, 2011)(Robreno, J.)(applying maritime law to ship in "dry dock" for overhaul).

By contrast, work performed in other areas of the shipyard or on a dock, (such as work performed at a machine shop in the shipyard, for example, as was the case with the Willis plaintiff discussed in Conner) is land-based work. The connection test requires that the incident could have "'a potentially disruptive impact on maritime commerce,'" and that "'the general character' of the 'activity giving rise to the incident' shows a 'substantial relationship to traditional maritime activity.'" Grubart, 513 U.S. at 534 (citing Sisson, 497 U.S. at 364, 365, and n.2).

(i)  Locality Test

If a service member in the Navy performed some work at shipyards (on land) or docks (on land) as opposed to

8

onboard a ship on navigable waters (which includes a ship

docked at the shipyard, and includes those in "dry dock"),

"the locality test is satisfied as long as some portion of

the asbestos exposure occurred on a vessel on navigable

waters." Conner, 799 F. Supp. 2d at 466; Deuber, 2011 WL

6415339, at *1 n.1. If, however, the worker never sustained

asbestos exposure onboard a vessel on navigable waters,

then the locality test is not met and state law applies.

   (ii)   Connection Test

   When a worker whose claims meet the locality test was

primarily sea-based during the asbestos exposure, those

claims will almost always meet the connection test

necessary for the application of maritime law. Conner, 799

F. Supp. 2d at 467-69 (citing Grubart, 513 U.S. at 534).

This is particularly true in cases in which the exposure

has arisen as a result of work aboard Navy vessels, either

by Navy personnel or shipyard workers. See id. But if the

worker's exposure was primarily land-based, then, even if

the claims could meet the locality test, they do not meet

the connection test and state law (rather than maritime

law) applies. Id.

9

It is undisputed that the alleged exposure pertinent to Defendants occurred during Plaintiffs' work aboard Navy ships. Therefore, the exposure occurred during sea-based work. See Conner, 799 F. Supp. 2d 455; Deuber, 2011 WL 6415339, at *1 n.1. Accordingly, maritime law is applicable to Plaintiffs' claims against Defendants. See Conner, 799 F. Supp. 2d at 462-63.

Absent a controlling statute, maritime law is "developed by the judiciary" and is "an amalgam of traditional common-law rules, modifications of those rules, and newly created rules." East River Steamship Corp. v. Transamerica Delaval, Inc., 476 U.S. 858, 864-65 (1986). A court deciding an issue under maritime law should look to - and has discretion to determine and define - the "prevailing view" on land, with an eye toward advancing the primary goals of maritime law. See, e.g., id.; Pan Alaska Fisheries, Inc. v. Marine Constr. & Design Co., 565 F.2d 1129, 1134 (9th Cir. 1977). Because there is no controlling statute that applies here, the Court must locate the answer within the interstices of maritime common law.

### C.   Negligence Liability Under Maritime Law

It is well settled that maritime law recognizes a cause of action for negligence. Norfolk Shipbuilding & Drydock Corp. v.

10

Garris, 532 U.S. 811, 813-15, 121 S. Ct. 1927, 1929-31 (2001). In

Norfolk Shipbuilding, the Supreme Court wrote:

> It is settled that the general maritime law
> imposes duties to avoid unseaworthiness and
> negligence, see, e.g., Mitchell v. Trawler Racer,
> Inc., 362 U.S. 539, 549-550, 80 S. Ct. 926, 4 L. Ed.
> 2d 941 (1960) (unseaworthiness); Leathers v. Blessing,
> 105 U.S. 626, 630, 26 L. Ed. 1192 (1881) (negligence),
> that nonfatal injuries caused by the breach of either
> duty are compensable, see, e.g., Mahnich v. Southern
> S.S. Co., 321 U.S. 96, 102-103, 64 S. Ct. 455, 88 L.
> Ed. 561 (1944) (unseaworthiness); Robins Dry Dock &
> Repair Co. v. Dahl, 266 U.S. 449, 457, 45 S. Ct. 157,
> 69 L. Ed. 372 (1925) (negligence), and that death
> caused by breach of that duty of seaworthiness is also
> compensable, Moragne v. States Marine Lines, Inc.,
> [398 U.S. 375, 409, S. Ct. 1772, 1772, 26 L. Ed. 2d
> 339 (1970)]. Before us is the question whether death
> caused by negligence should, or must under direction
> of a federal statute be treated differently.
>
> .    .    .
>
> The general maritime law has recognized the
> tort of negligence for more than a century, and it has
> been clear since Moragne that breaches of a maritime
> duty are actionable when they cause death, as when
> they cause injury. Congress's occupation of this field
> is not yet so extensive as to preclude us from
> recognizing what is already logically compelled by our
> precedents.
>
> The maritime cause of action that Moragne
> established for unseaworthiness is equally available
> for negligence.

Id. , 532 U.S. at 813-814, 820, 121 S. Ct. at 1929-1930, 1933.

As a matter of law, Defendants owed Plaintiffs a duty of

reasonable care under the circumstances. See Norfolk

11

Shipbuilding & Drydock Corp., 532 U.S. at 813-15, 121 S. Ct. at

1929-31; East River S.S. Corp., 476 U.S. at 866, 106 S. Ct. at

2299 (citing Kermarec, 358 U.S. at 632, 79 S. Ct. at 410); Hess,

361 U.S. at 323, 80 S. Ct. at 348 (citing Kermarec).

## III. DISCUSSION

### A. A Navy Ship Is Not Itself a "Product" Under Maritime Strict Product Liability Law

In Mack v. General Electric Co., 896 F. Supp. 2d 333

(E.D. Pa. 2012)(Robreno, J.), this Court held that maritime law

recognizes the sophisticated user defense (and does not

recognize the sophisticated intermediary defense). 896 F. Supp.

2d at 342-43. In doing so, it explained that, under the

"sophisticated user" defense, the manufacturer or supplier of a

product has the burden of demonstrating that the ultimate end-

user (i.e., person injured by the product) was a "sophisticated"

user of the product. Id. at 343.[3]

The Court pointed out that, with respect to allegedly

inadequate warnings, maritime law recognizes both strict product

liability causes of action (i.e., defective warning or defective

---

[3]    By contrast, under the "sophisticated intermediary" defense
(sometimes also referred to as the "sophisticated purchaser"
defense), a manufacturer or supplier need only demonstrate that
the purchaser of the product (which may include an intermediary,
such as the Navy), rather than the actual individual using the
product, was "sophisticated" about the hazards of the product in
order to be relieved of liability for injury arising from that
product.

design) and a negligent failure-to-warn cause of action. 896 F.

Supp. 2d at 343-44 n.12 (citing Conner v. Alfa Laval, Inc., 842

F. Supp. 2d 791, 796-97 (E.D. Pa. 2012)(Robreno, J.) (citing

East River Steamship Corp., 476 U.S. at 865; Ocean Barge

Transport Co. v. Hess Oil Virgin Islands Corp., 726 F.2d 121,

123 (3d Cir. 1984); Restatement (Third) of Torts: Prods. Liab. §

2 (1998) (previously Restatement (Second) of Torts § 402A (esp.

comments h and j))); Lindstrom v. A-C Prod. Liab. Trust, 424

F.3d 488, 492 (6th Cir. 2005)). In doing so, it noted that

"[m]aritime law has previously adopted section 402A of the

Restatement (Second) of Torts in the context of product

liability claims." 896 F. Supp. 2d at 339 n.2 (citing East River

Steamship Corp., 476 U.S. at 865; Saratoga Fishing Co. v. J.M.

Martinac & Co., 520 U.S. 875, 879 (1997)).

        Mack also held that, under maritime law, the

"sophisticated user" defense serves only to bar negligent

failure to warn claims (and not strict product liability

claims). Setting forth its rationale for this holding, the Court

explained that, "negligence law focuses on the reasonableness of

defendants' conduct, while strict liability focuses on

defendants' product without regard to conduct or fault. . .  It

follows logically that the duty to warn. . . cannot depend on a

particular [user]'s knowledge or level of sophistication." 896

F. Supp. 2d at 344 (citing Menna v. Johns-Manville Corp., 585 F.
Supp. 1178, 1184 (D.N.J. 1984)).

In reaching its decision in Mack, the Court relied
heavily upon Section 388 of the Restatement (Second) of Torts,
which sets forth a provision that gives rise to a "sophisticated
user" and/or "sophisticated purchaser" defense. It reads:

§ 388. Chattel Known To Be Dangerous For Intended Use

One who supplies directly or through a third person a
chattel for another to use is subject to liability to
those whom the supplier should expect to use the
chattel with the consent of the other or to be
endangered by its probable use, for physical harm
caused by the use of the chattel in the manner for
which and by a person for whose use it is supplied, if
the supplier:

(a) knows or has reason to know that the chattel is or
is likely to be dangerous for the use for which it is
supplied, and

(b) has no reason to believe that those for whose use
the chattel is supplied will realize its dangerous
condition, and

(c) fails to exercise reasonable care to inform them
of its dangerous condition or of the facts which make
it likely to be dangerous.

Restatement (Second) of Torts § 388.[4]

---

[4]     Comment "k" to Section 388 of the Restatement (Second) of
Torts contemplates the sophisticated user defense, and explains:
"One who supplies a chattel to others to use for any purpose is
under a duty to exercise reasonable care to inform them of its
dangerous character . . . if, but only if, he has no reason to
expect that those for whose use the chattel is supplied will
discover its condition and realize the danger involved."

14

With its decision in Mack, this Court also concluded that a Navy ship is not a "product" for purposes of strict product liability law. As part of its analysis in reaching this decision, the Court determined that the role of the builder of Navy ships was more like a provider of a service (assembly of an assortment of products) than a manufacturer or supplier of a product. 896 F. Supp. 2d at 346 (citing, inter alia, 63 Am. Jur. 2d Prod. Liab. § 617 ("The concept of strict tort liability does not apply to defective services, as opposed to defective products")). In a footnote, the Court expressly stated that a Navy shipbuilder is not a supplier of products. Id. at 346 n.16.[5]

Weighing the various policy considerations at issue, the Court explained that maritime law seeks to promote maritime commerce and to protect those working at sea -- and that the policy underlying strict liability is to place the burden of preventing the harm on the party best able to prevent the harm.

---

Comment "n" contemplates the sophisticated purchaser (or sophisticated intermediary) defense, which Mack rejected.

[5]   In footnote 16, in the context of its analysis regarding strict liability, the Court wrote: "Although the Court has previously referred to shipbuilders as "suppliers," no decision has ever turned on this characterization, and the Court has never squarely addressed the issue. For the sake of clarity, the Court now notes that a Navy shipbuilder is not a supplier of products." For the sake of clarity, the Court emphasizes that a Navy shipbuilder is not a supplier of products for purposes of strict product liability.

896 F. Supp. 2d at 338, 345 (citing East River Steamship Corp.,

476 U.S. at 866). It concluded that, as between shipbuilders and

the manufacturers of the various products assembled to complete

a ship, the entities best able to protect sea-bound workers and

to bear the burden of preventing harm to those workers (with the

least discouragement of participation in maritime commerce by

those entities most crucial to it) are the manufacturers of the

various products aboard the ship. Id. at 345. The Court

explained that, as a matter of policy, to impose upon a Navy

shipbuilder potential strict liability for each of the thousands

of products assembled in a Navy ship pursuant to Navy

specifications, would be an undue, unmanageable, and cumulative

burden likely to discourage the activity of shipbuilding. Id.

### B. Rejection of Defendants' Arguments

Defendants challenge this Court's determination in

Mack that they can be liable in negligence for failing to warn

of hazards associated with the various products they installed

aboard the ships they built for the Navy, and that the defense

made available to them by Mack with respect to a negligence

claim (the sophisticated user defense) is governed by Section

388 of the Restatement (Second) of Torts. Defendants contend

that there is an unsettled issue before the Court, and frame the

issue as whether a Navy shipbuilder has a duty to warn those who

16

subsequently work aboard the ships it builds regarding the hazards of the various products aboard those ships. In doing so, Defendants attempt to identify a duty and accompanying cause of action separate and distinct from that surrounding a common law negligence claim -- a duty and cause of action (or lack thereof) unique to Navy shipbuilders. As explained more fully below, Defendants' attempt is misplaced because the pertinent claim against them is a common law negligence claim.

In response, Plaintiffs contend that the issue before the court is whether Defendants' failure to provide warnings regarding the asbestos products at issue constitutes common law negligence (i.e., a breach of the duty to exercise reasonable care under the circumstances, which caused damages to Plaintiffs). Plaintiffs assert that Defendants either knew or should have known of the hazards of the asbestos products that they installed aboard the ships they built (such as insulation), and that Plaintiffs would or could be unaware of those dangers because warnings on these products were either non-existent, or were removed or obscured during the installation process by, for example, mud or paint applied over the warning.

The Court has considered Defendants' arguments and rejects each argument, addressing them below seriatim:

17

### (i)   A Navy Ship As Chattel

First, Defendants contend that, in light of the
Court's holding in Mack that a Navy ship is not a "product"
within the meaning of strict liability law, Section 388 (which
sets forth grounds for negligence liability for suppliers of
chattel) is not applicable to them because it pertains to
"chattel." Huntington Ingalls contends, specifically, that
shipbuilders are more akin to a landowner or premises owner than
a supplier of chattel.

The Court finds this contention wanting. The fact that
a ship itself (as a whole) is not a "product" does not preclude
it (or the various products installed within it) from being
"chattel."[6] Section 388 applies not only to manufacturers of
products, but to suppliers of products as well. See Mack, 896 F.
Supp. 2d at 339 n.3. It is true that the Court found that a Navy
shipbuilder is not a "manufacturer" or "supplier" of a product
with respect to the ship as a whole for purposes of strict
product liability law. However, the Court holds now that it is a
different inquiry whether, for purposes of negligence law, a
Navy shipbuilder is a "supplier" (though not a "manufacturer")

---

[6]      Chattel is defined as "[m]ovable or transferrable
property." Black's Law Dictionary (7th ed. 1999). A ship is both
movable and transferrable, as are the products installed in it.

18

of the various products installed aboard the ship.[7] With respect
to negligence, a Navy shipbuilder's liability is not based on
the manufacture or supply of the ship as a whole (the subject
addressed in Mack), but on the supply of the individual products
therein (such as insulation, turbines, pumps, etc.) -- which are
indisputably both "products" and "chattel."[8]

(ii) Duty to Warn About Hazards Known to the Navy

Next, Defendants argue that they should not be liable
for Plaintiffs' asbestos-related injuries because they had
reason to believe that the Navy knew of the risks of asbestos
when they commissioned the ships at issue -- and, in fact, knew
more about the hazards than did Defendants -- such that they had
no duty for Defendants to warn about those risks. Defendants

---

[7]     The Court explicitly held in Mack that a Navy ship is not a
"product" for purposes of strict liability law -- and
deliberately did not extend that determination to negligence
law. 896 F. Supp. 2d at 346 n.16.

[8]     While Defendants' contention that they are akin to a
landowner or premises owner implies a ship is akin to land (such
that pumps, turbines, etc. might be considered attached to that
"land" and therefore not chattel), the Court rejects the
suggestion that a ship is like land. For one thing, if the ship
were land, these cases would not be subject to maritime law. The
concept of land sailing to sea is too far-fetched to warrant
further consideration. A shipbuilder is not like a premises
owner because it built and provided the ship the Navy
commissioned -- it did not own it as a premises. Moreover, the
Court has already made the determination (in Mack) that a
shipbuilder is most akin to a provider of services (not a
landowner or premises owner).

19

General Dynamics and Todd Shipyards cite to case law suggesting that they had no such duty.[9] Defendant Todd Shipyards asserts, in particular, that the Navy's failure to protect Plaintiffs from asbestos hazards was a superseding cause of Plaintiffs' injuries, such that any liability on the part of Defendants was cut off by the Navy's conduct.

It is true that Defendants are not liable where they had "reason to believe that those for whose use the chattel is supplied will realize its dangerous condition," as set forth in Section 388(b). However, Defendants conflate the issue of duty with whether they are excused from any breach of their duty to exercise reasonable care under the circumstances.[10] The argument set forth by Defendants is, in short, the very sophisticated user defense set forth by Section 388 of the Restatement and recognized by Mack.[11] This is an affirmative defense. See 896 F.

---

[9]    Defendant General Dynamics relies upon a South Dakota case: Jensen v. Hy-Vee Corp., 09-cv-4057, 2011 WL 1832997 (D.S.D. May 13, 2011). Defendant Todd Shipyards cites to this Court's own decisions in Mack and Young.

[10]   A simple illustration is helpful: a driver of a motor vehicle has a duty to guide the vehicle in a safe manner. If the driver exceeds the speed limit, he may be in breach of that duty. However, the breach of the duty may not result in liability if, for example, at the time the action is brought, the statute of limitations on that breach has run.

[11]   To the extent that Defendants contend that they are immune from liability because they had reason to believe that the Navy (as opposed to the individual Navy seaman plaintiff) was aware

Supp. 2d at 341. If proven, a breach of Defendant's duty (by failing to warn) may be excused. It is whether Defendants breached that duty which is at issue here, and not the existence of a duty.

To the extent that Defendants argue that they should not be liable in any case as a matter of law because the Navy (and/or its seamen)[12] always knew as much (or more) than Defendants did about the hazards at issue, and/or the Navy had complete control over how the ships were built (including whether and how warnings were to be provided), the Court has already recognized that the sophisticated user defense and the government contractor defense insulate Defendants from liability under certain circumstances.[13] Mack, 896 F. Supp. 2d at 335, 343

---

of the hazards, the Court has already rejected this argument in Mack. This argument is, in essence, the "sophisticated purchaser" or "sophisticated intermediary" defense.

[12]   The Court notes also that some of the Plaintiffs (or their decedents) were not part of the Navy and were, instead, employed by private employers.

[13]   It is worth noting that many of the cases and other authorities relied upon by Defendants provide relief from liability in circumstances that, for all practical purposes, amount to satisfaction of the government contractor defense and/or sophisticated user defense. These include Jensen, Bartholomew, Sanchez v. Swinerton & Walberg Co., 47 Cal. App. 4th 1461 (Cal. App. 1996), Patraka v. Armco Steel Co., 495 F. Supp. 1013, 1020 (M.D. Pa. 1980), and Restatement (Second) of Torts Sections 442 and 452. As such, the general rationale of these cases is not inconsistent with MDL jurisprudence and Defendants already have a means of avoiding liability where appropriate.

(sophisticated user); Willis v. BW IP Int'l, Inc., 811 F. Supp. 2d 1146, 1154 (E.D. Pa. 2011) (Robreno, J.) (discussing government contractor defense, as set forth in Boyle v. United Technologies Corp., 487 U.S. 500, 512 (1988)).

(iii)   Consistency With Potential for Strict<br>Liability and the "Bare Metal Defense"

Defendants also urge that holding them liable in negligence would be inconsistent with this Court's prior holding in Mack that shipbuilders cannot be liable in strict liability, and its prior holding in Conner v. Alfa Laval, Inc., 842 F. Supp. 2d 791, 801 (E.D. Pa. 2012)(Robreno, J.), that maritime law recognizes the so-called "bare metal defense." Specifically, Defendant General Dynamics contends that, as a matter of policy – and to be consistent with its prior decisions, shipbuilders should have no duty to warn of hazards of asbestos products on ships because this would result in multiple, redundant warnings – and tremendous expense to shipbuilders – without any measurable increase in safety for maritime workers. In connection with this contention, the Defendants claim that the manufacturers of the individual products installed by the

---

To the extent that any Defendant has presented evidence to support an assertion of the sophisticated use defense, the Court will address that basis for summary judgment separately.

shipbuilders are better situated to provide warnings about those products than are the shipbuilders.

In response to this, and also as a matter of policy, Plaintiffs contend that it would undermine the primary purpose of maritime law (i.e., protection of those working at sea) to hold that a Navy shipbuilder had no duty to warn about the hazards of the asbestos products it installed. They also clarify that they do not contend that a shipbuilder was required to investigate and learn about every hazard of every product it installed aboard a ship and, instead, needed only to warn about those products that it knew or should have known were dangerous to Plaintiffs.

The Court must reject Defendants' assertion that, as a matter of policy, they should be insulated from liability on a negligence theory because the manufacturers of the individual products installed by the shipbuilders were better situated to provide warnings about those products than were the shipbuilders. The Supreme Court has explicitly addressed this rationale under maritime law, distinguishing between its applicability to strict liability claims and negligence claims. In East River S.S. Corp. v. Transamerica Delaval, Inc., the Court first recognized strict product liability under maritime law, and discussed the resulting availability of both strict

23

liability and negligence causes of action regarding products
(such as turbines) installed aboard ships. 476 U.S. 858, 866,
106 S. Ct. 2295, 2299 (1986). In doing so, it explained that,
"strict liability should be imposed on the party best able to
protect persons from hazardous equipment," while clarifying by
contrast that, "to the extent that products actions are based on
negligence, they are grounded in principles already incorporated
into the general maritime law." Id. The Court then reiterated
the existing public policy underlying maritime law, noting that,
"[p]roducts liability grew out of a public policy judgment that
people need more protection from dangerous products than is
afforded by the law of warranty." Id.

These considerations reflect a determination by the
Supreme Court that the basis and justification for negligence
liability under maritime law is and should be different from
that for strict liability - as well as a long-standing policy
determination that, under maritime law, negligence law should
seek to maximize protection for maritime workers as opposed to
sheltering from liability those supplying products for use by
maritime workers. Moreover, as already set forth by this Court
in Mack, the rationale for potentially different standards for
liability under the two different causes of action is that
"negligence law focuses on the reasonableness of defendants'

24

conduct, while strict liability focuses on defendants' product without regard to conduct or fault." 896 F. Supp. 2d at 344.

To the extent that Defendants suggest by relying upon Connor v. Alfa Laval, Inc., 842 F. Supp. 2d 791 (E.D. Pa. 2012) (Robreno, J.), that they cannot be liable in negligence on grounds of the so-called "bare metal defense" recognized by maritime law and arising from Restatement (Second) of Torts Section 402(A), the argument is misplaced because the bare metal defense pertains to cases in which products and component parts are incorporated into each other or designed to be used in combination with each other (e.g., gaskets and packing incorporated into pumps and turbines, or insulation applied externally to them). Because a ship is not a "product," the various products installed therein are not component parts of the ship; and they are not products designed to be used in connection with each other. Moreover, to the extent that Defendants suggest that, under Section 402(A), Navy shipbuilders are "sellers" of the various products aboard a ship (because they are "suppliers" of those products)[14] and therefore entitled to the "bare metal defense" with respect to those products, the Court notes that Comment "a" to Section 402(A), which gives rise

---

[14]    Comment "a" to Section 402(A), pertaining to strict liability, specifies that it is "a special rule applicable to sellers of products."

to the "bare metal defense," explicitly states that "[t]he rule
stated here is not exclusive, and does not preclude liability
based upon the alternative ground of negligence of the seller,
where such negligence can be proved." (Emphasis added.)

(iv) Exceptions to the General Duty of Care

Finally, Defendants seek to create and/or avail
themselves of various exceptions to the general duty of
reasonable care underlying a common law negligence claim,
asserting that a Navy shipbuilder is similarly situated to a
premises owner, an employer (vis a vis an independent
contractor), a ship owner (vis a vis a stevedore or shipyard),
and/or a building contractor. In support of these assertions,
they cite various provisions of the Restatement (Second) of
Torts, which they contend govern the issue, and they selectively
cite to cases decided under the laws of a variety of
jurisdictions, which they contend support the application to
Navy shipbuilders of an exception to the general rule of
negligence liability.

Defendant Todd Shipyards relies upon Sections 442 and
452 of the Restatement (Second) of Torts, pertaining to
"Superseding Cause" in negligence liability.[15] As the Court has

_____

[15]     Section 442 addresses "Considerations Important in
Determining Whether an Intervening Force is a Superseding

already explained, this reliance confuses the issue of existence
of a duty with excuse of the breach of that duty based on the
availability of an affirmative defense. The notion of
superseding cause and third party failure to prevent harm fall
within this category.

        In reply briefing, Defendant Huntington Ingalls
contends that, instead of Section 388 (which was discussed by
this Court in Mack, 896 F. Supp. 2d at 333-343, and Young v.
Georgia Pacific Corporation, No. 11-67757 (Doc. Nos. 114 and
122)), the Court should look to Restatement Sections 351 to 353,
pertaining to "Liability of Possessors of Land to Persons on the
Land."[16] Also in a reply brief, it argues for the first time that
the Court should look for substance to 75 A.L.R. 5th 413,
pertaining to "tort liability of building or construction
contractor for injury or damage to third person occurring after
completion and acceptance of work."[17] Because these arguments

---

Cause." Section 452 addresses a "Third Person's Failure to
Prevent Harm."

[16]    Because this argument was raised for the first time in
reply briefs, and not in its motions, the Court need not
consider this argument. However, the Court notes that its later
discussion in this decision rejecting the notion that Navy
shipbuilders should be treated as landowners would be applicable
in rejecting application of Sections 351 to 353.

[17]    Again, because this argument was raised for the first time
in a reply brief, the Court need not consider this argument.
However, the Court notes that nothing in 75 A.L.R. 5th 413 is

were not raised until reply briefing, the Court need not address them. See Reynolds v. General Electric, 2012 WL 2835500, at *1 (E.D. Pa. April 2, 2012) (Robreno, J.) (citing Alston v. Forsyth, 379 F. App'x 126, 129 (3d Cir. 2010)).

Next, Defendant Huntington Ingalls cites to cases decided under a variety of jurisdictions, urging the Court to adopt the reasoning of one or more of these cases. Each of these cases, however, is easily distinguishable. First, it cites to Hurst v. Triad Shipping Co., 554 F.2d 1237 (3d Cir. 1977), and Bartholomew v. SeaRiver Maritime, Inc., 193 Cal. App. 4th 699, 713-714 (Cal. App. 2011), each of which pertain primarily to statutory duties created by the Longshore and Harbor Workers' Compensation Act (LHWCA).[18] Because the claim at issue in the present cases is a negligence claim -- and not a LHWCA claim -- these cases' holdings pertaining to the LHWCA are inapplicable.

In its limited discussion of negligence, Hurst applied Section 409 of the Restatement (Second) of Torts, pertaining to

---

inconsistent with the rule and analysis the Court adopts herein regarding negligence; to the extent that this A.L.R. provision would relieve Defendants of liability, such relief is available by way of the sophisticated user and/or government contractor defense(s) already recognized by this Court as available to Defendants in cases governed by maritime law.

[18]   Hurst involved the standard of care to which ship owners are to be held in longshoremen's negligence actions under the LHWCA. Bartholomew addressed whether the LHWCA imposed a duty for a vessel owner to warn shoreside repair workers about asbestos hazards aboard the ships.

an employer's liability for an independent contractor's actions, in determining that a ship owner was not liable for the acts of a stevedore acting as an independent contractor. Section 409 is inapplicable to the case at hand because Defendants have already been deemed by this Court to be akin to suppliers of services and products installed on the ships (not employers). Moreover, Defendant's reliance on Hurst is misplaced because, even assuming that the proper context for the analysis was that of employer and independent contractor, Defendants would be more analogous to the independent contractor than the employer, such that Hurst would suggest that any liability is properly placed upon Defendants.

Huntington Ingalls also cites to Earles v. Union Barge Line Corp., 486 F.2d 1097 (3d Cir. 1973), in which the court held that a defendant ship owner could not be liable for harm to ship employees arising from fumes on the ship because the ship was not in the possession or control of the ship owner at the time of the creation of the hazard such that the defendant had no control over it. By contrast, in the asbestos cases at hand, the hazard arose (or, more specifically, was created by Defendants) at the time when Defendants were in possession and control of the ships and, importantly, at the time when

29

prevention of the hazard by warnings could have occurred. As such, Earles is easily distinguishable.

Huntington Ingalls further relies upon Peterson v. Superior Court, 10 Cal. 4th 1185 (Cal. Ct. 1995). However, Peterson, unlike the present cases, involved a defendant not in the chain of distribution. Moreover, it was a case about strict liability -- not negligence. As such, it is inapplicable.

Finally, Huntington Ingalls cites San Francisco Unified School District v. W.R. Grace & Co., 37 Cal. App. 4th 1318 (Cal. App. 1995), which addresses the statute of limitations surrounding asbestos contamination. This case did not directly address the issue of negligence of a ship builder and, as such, is not on point.

## C.  Scope of Duty and Application of Negligence Law

Defendants have not cited -- and the Court has searched for but not identified -- any authority indicating that a shipbuilder is relieved from negligence liability under maritime law, or that because they are not liable under strict liability law, the same result obtains under negligence law. Therefore, the Court declines to adopt the sweeping proposition set forth by Defendants that builders of Navy ships can never face negligence liability under any circumstances and are

30

instead immune from all liability surrounding all of their activities.[19] Rather, applying the general rule of law, Defendants owed Plaintiffs (and their decedents) a duty of reasonable care under the circumstances. See Norfolk Shipbuilding & Drydock Corp., 532 U.S. at 813-15, 121 S. Ct. at 1929-31; East River S.S. Corp., 476 U.S. at 866, 106 S. Ct. at 2299; Hess, 361 U.S. at 323, 80 S. Ct. at 348.

In light of this determination that a Navy shipbuilder is liable in negligence under maritime law for, inter alia, products it installed aboard a ship, the Court now addresses the parameters of that liability. A Navy shipbuilder defendant is liable in negligence where it failed to exercise reasonable care under the circumstances and that failure caused injury to a plaintiff. See Restatement (Second) of Torts, Section 283. The core of this inquiry is whether the Defendant behaved reasonably under the circumstances with respect to providing warnings (or lack thereof) regarding the various products aboard the Navy ships it assembled.

The reasonableness of a Navy shipbuilder's conduct is a highly fact-driven analysis that necessarily varies from case

---

[19]     At oral argument, Defendants appear to have retreated somewhat from the breadth of this assertion. However, the briefing suggests that they are seeking a ruling that insulates them from all negligence liability, in addition to the ruling obtained in Mack, which insulates them from all strict product liability.

to case and from defendant to defendant. Relevant variable
factors include such things as the year in which the ship at
issue was built, the extent of the particular defendant's
knowledge about asbestos hazards at the time the ship was built,
the extent of the defendant's knowledge about the hazards of a
particular product aboard the ship, whether a product (such as
insulation) was initially installed by Defendant or was a later
replacement product, whether that product was supplied with a
warning label already included by the product manufacturer,
whether the defendant removed or obscured that warning label
such that the end user would not receive it, whether it was
logistically possible to provide with a particular product a
warning that would reach the end user, the knowledge (if any) of
the defendant that the end user would receive training by the
Navy about the hazards of the products being installed aboard
the ship.

The reasonableness of Defendants' conduct -- and,
therefore, liability -- regarding provision of warnings may be
different from one set of circumstances to another. For example,
it is likely that a shipbuilder did not behave unreasonably
under the circumstances -- despite not having provided a warning
with a product -- where it installed a product that already had
a warning on it, and that warning remained intact and visible

32

for the end user to receive.[20] In contrast, it is also possible

that a shipbuilder could be deemed to have acted unreasonably

under the circumstances even where it did provide a warning with

a given product if, for example, the warning provided was

insufficient in substance or form such that it could not

reasonably be expected to protect the end user.[21]

In short, it is not possible for the reasonableness of

all Navy shipbuilders under all circumstances to be decided at

once with a single legal ruling -- or even with a single factual

finding.[22] As it is universally recognized, a highly fact-driven

---

[20]   This example provides a good illustration for rejecting
Defendants' contention that the Court's allowance of any
potential for negligence liability of shipbuilders means that a
shipbuilder must educate itself about and provide a warning
about every single product aboard a ship -- even where doing so
would result in multiple, duplicate warnings. The Court notes
here also that, where a Defendant did not know about the hazards
of a given product, it is not clear that it would be found
negligent for failing to warn about that product, as it may be
that there is no reason it should have known about that hazard.

[21]   For example, provision of a warning may be insufficient
where it fails to identify the danger with appropriate
specificity, or is provided in font too small to read, in a
language not likely to be understood by the recipient, or in ink
likely to fade or deteriorate under the conditions in which it
will exist.

[22]   Defendant Todd Shipyards has argued that Plaintiffs are
required to present an expert to testify as to what warnings
should have been provided by Defendants. This assertion is
mistaken, as it implies a uniform and pre-determined standard
for warning that is applicable in all circumstances. The very
nature of Plaintiffs' claim as a negligence claim dictates that
the standard with which Defendants had to comply in providing

analysis must be performed on a case-by-case basis -- and usually by the fact finder in the action (generally the jury). See, e.g., Christensen v. Georgia-Pacific Corp., 279 F.3d 807, 813 (9th Cir. 2002)("Summary judgment is rarely granted in negligence cases because the issue of '[w]hether the defendant acted reasonably is ordinarily a question for the trier of fact'")(citing Martinez v. Korea Shipping Corp., Ltd., 903 F.2d 606, 609 (9th Cir. 1990)); Manuel v. Cameron Offshore Boats, 103 F.3d 31, 33 (5th Cir. 1997); Olejniczak v. E.I. DuPont De Nemours & Co., 998 F. Supp. 274 (W.D.N.Y. 1998) (citing Stagl v. Delta Airlines, Inc., 52 F.3d 463, 470-71, n.5 (2d Cir. 1995)); Matthews v. Greyhound Lines, Inc., 882 F. Supp. 146, 148 (D. Ariz. 1995)(citing Markowitz v. Arizona Parks Bd., 146 Ariz. 352, 706 P.2d 364 (1985)).

In conclusion, the Court emphasizes that, contrary to Defendants' contention, the rule herein is reasonable and consistent with prior jurisprudence in this Court. Where a Navy shipbuilder has behaved reasonably under the circumstances, it will not incur negligence liability; and where it has not behaved reasonably under the circumstances, negligence liability is not unwarranted.

---

warnings was reasonableness under the circumstances. Norfolk Shipbuilding & Drydock Corp., 532 U.S. at 813-15.

## IV.  CONCLUSION

The Court concludes that, under maritime law, a builder of a Navy ship (like any other entity or individual) is liable in negligence if it failed to exercise reasonable care under the circumstances and that such failure caused injury to the plaintiff -- and that this is true regardless of the fact that a Navy shipbuilder cannot be liable under a theory of strict liability due to the fact that a Navy ship is not a "product" for purposes of strict product liability.

With respect to Plaintiffs' claims for negligence, summary judgment in favor of Defendants on grounds that Navy shipbuilders owed no duty to warn Plaintiffs is denied.[23] However, summary judgment in favor of these shipbuilder Defendants is granted with respect to Plaintiff's strict liability claims because, under maritime law, a Navy ship is not a "product" for purposes of strict product liability.

Appropriate orders in each of the cases as to which this memorandum of law applies will be issued herewith.

---

[23]   The Court notes that Defendants generally have not challenged the sufficiency of Plaintiffs' evidence regarding Defendants' alleged negligence. Therefore, the Court need not assess such sufficiency herein. However, to the extent that a Defendant has challenged any aspect of an individual plaintiff's negligence claim (including but not limited to the sufficiency of evidence regarding exposure/causation), the Court will address those arguments separately.